PETER SIACHOS
PSIACHOS@GORDONREES.COM
DIRECT DIAL: (973) 549-2532

Admitted In: NJ, NY, SC, and DC



ATTORNEYS AT LAW
18 COLUMBIA TURNPIKE, SUITE 220
FLORHAM PARK, NJ 07932
PHONE: (973) 549-2500
FAX: (973) 377-1911
WWW.GORDONREES.COM

August 31, 2020

**Via ECF**

The Hon. Chief Judge Roslynn R. Mauskopf
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re: *ILKB, LLC v. Camac Partners LLC et al.*
> **Civil Action No. 1:20-cv-03850-RRM-VMS**
> Response to the Order to Show Cause

Dear Chief Judge Mauskopf:

Your Honor has ordered ILKB to show cause why this Court has subject matter jurisdiction and why ILKB is likely to succeed on the merits of its Defend Trade Secrets Act ("DTSA") claim. For the reasons stated below, the Court has subject matter jurisdiction because ILKB has adequately pled a DTSA claim, over which this Court has original jurisdiction. The Court has supplemental jurisdiction over ILKB's state law claims arising from the same operative facts. ILKB is likely to succeed on the merits because there is significant evidence that Defendants have misappropriated ILKB's trade secrets through violating a non-disclosure agreement ("NDA") and confidentiality agreements contained in franchise agreements. There is further evidence that Defendants continue to use ILKB's trade secrets to directly compete with ILKB. This brief is supported by the Verified Complaint ("Compl."), the Declarations of Daniel Castellini and Rebecca Doe, and the exhibits attached to those documents.

## **LEGAL STANDARD**

"A case arises under federal question jurisdiction where federal law creates the plaintiff's cause of action . . . ." *Limtung v. PayPal Holdings, Inc.*, No. 19-CV-4316 (RRM) (SJB), 2019 U.S. Dist. LEXIS 201348, at *7 (E.D.N.Y. Nov. 18, 2019). When the sufficiency of jurisdictional allegations is questioned, "[t]he task of the district court is to determine whether the Pleading 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal alterations

omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In assessing jurisdiction, the Court should accept the allegations in the Complaint as true, and draw all reasonable inferences in ILKB's favor. *See id.* at 57.

## FACTUAL BACKGROUND

ILKB is a franchisor of kickboxing studios. (Compl. ¶¶ 12-16; Decl. Castellini at ¶ 5.) ILKB has developed a proprietary system for operating kickboxing studios. (Compl. at ¶¶ 16-19, Decl. Castellini at ¶ 5.) ILKB's system includes, among other things, manuals, training programs, marketing and branding plans, strategic plans, and other processes and procedures for operating kickboxing studios. (Compl. ¶¶ 16-19, 28; Decl. Castellini at ¶ 5.) ILKB licenses its marks and systems to its franchisees pursuant to franchise agreements, which include provisions protecting the confidentiality of the licensed system and associated written materials. (Compl. at ¶¶ 18-22, Decl. Castellini at ¶ 6.) ILKB's system has value because it is not widely known; if the system were widely known, kickboxing studio operators could use ILKB's system to operate their studios without paying royalties and fees to ILKB. (*Id.* at ¶¶ 11, 16.) Because ILKB's system for operating kickboxing studios has value by virtue of not being widely known, and because ILKB takes reasonable measures to keep the system confidential, the system and associated documents are trade secrets under the DTSA. (*Id.* at ¶¶ 9-11, 13-16.)

ILKB and Camac entered an NDA in January 2020 to facilitate negotiations for a potential asset sale from ILKB to Camac. (*Id.* at ¶ 24; ECF 1-2; Decl. Castellini at ¶¶ 8-10.) Camac agreed to keep information obtained from ILKB confidential and to use the information only for the purpose of evaluating a purchase of ILKB's assets. (Compl. ¶¶ 29-35; ECF No. 1-2.) Pursuant to that agreement, ILKB shared its trade secrets with Camac. (Compl. ¶¶ 26-28; Decl. Castellini at ¶¶ 8-10.) Shahinian had access to ILKB's trade secrets by virtue of his position within Camac, and was involved in receiving ILKB's confidential information. (*See id.* at ¶¶ 25-26; Decl. Castellini at ¶ 10.) Lanier had access to similar material by virtue of being a franchisee. (Decl. Castellini at ¶ 13.) Camac and Shahinian proceeded to share ILKB's trade secrets with the other Defendants, and all of them together began using ILKB's trade secrets to operate a competing kickboxing franchisor. (*Id.* at ¶¶ 43, 46, 49-53, 64.) Specifically, there is direct evidence that Defendants are using ILKB's confidential and proprietary marketing strategy, franchisee information, and, most importantly, its training plans and programs. (*Id.* at ¶¶ 24-29.) Defendants used the franchisor contact information received from ILKB to contact ILKB franchisees and encourage them to defect. (*Id.* at ¶ 22.) Because the Defendants gained access to ILKB's trade secrets by means of a non-disclosure agreement and/or confidentiality provisions contained in a franchise agreement, and because the Defendants used and disclosed ILKB's trade secrets in violation of the non-disclosure agreement, they have misappropriated ILKB's trade secrets for the purposes of the DTSA.

## ARGUMENT AND AUTHORITY

**I.     The Court has subject matter jurisdiction because ILKB has adequately pled a DTSA claim, and ILKB's state-law claims arise from the same facts as that claim.**

ILKB has adequately invoked the Court's subject matter jurisdiction. ILKB has

sufficiently pled a claim under the DTSA. The Court has original jurisdiction over that claim. Because ILKB's state-law claims are a part of the same case and controversy, the Court has pendant jurisdiction over those claims. The Court, therefore, has subject matter jurisdiction over ILKB's entire claim, and should not dismiss this action, or any portion thereof, for want of jurisdiction.

### A. ILKB pled sufficient factual matter to establish a plausible a DTSA claim, over which the Court has general jurisdiction.

The DTSA provides that "[a]n owner of a trade secret that is misappropriated may bring a civil action under [18 U.S.C. § 1836] if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The Court has original jurisdiction over Section 1836 claims. 18 U.S.C. § 1836(c).

"There is no heightened pleading requirement on actions brought under the DTSA." *Gen. Sec., Inc. v. Commer. Fire & Sec., Inc.*, No. 17-CV-1194 (DRH) (AYS), 2018 U.S. Dist. LEXIS 105794, at *12 (E.D.N.Y. June 25, 2018) (internal alteration omitted) (quoting *Tesla Wall Sys. v. Related Companies, L.P.*, 2017 U.S. Dist. LEXIS 207932, 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 15, 2017)). "To state a claim under the DTSA, a plaintiff must allege, 'an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'" *Id.* at *10. By this standard, ILKB has adequately pleaded a DTSA claim.

#### 1. *ILKB has adequately pleaded that it has trade secrets.*

ILKB has pleaded sufficient factual matter, taken as true, to support a plausible inference that ILKB owns trade secrets. The definition of "trade secret" is broad. Protectable trade secrets include all valuable, confidential business information.

> [A]ll types of . . . business . . . information, including . . . methods, techniques, processes, [or] procedures . . . if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

To adequately plead the existence of a trade secret, a plaintiff need only "'generally identify the trade secrets at issue.'" *Uni-Systems, LLC v. United States Tennis Ass'n*, 350 F. Supp. 3d 143, 171 (E.D.N.Y. 2018) (quoting *Sorias v. Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 258 (E.D.N.Y. 2015)). "[T]he plaintiff is not required to specify the precise trade secrets to defeat a motion to dismiss." *Id.* "[W]hether trade information is secret is a question of fact." *Oneida Grp., Inc v. Steelite Int'l U.S.A., Inc.*, No. 17-cv-0957 (ADS)(AKT), 2017 U.S. Dist.

LEXIS 206717, at *18 (E.D.N.Y. Dec. 15, 2017). ILKB has pleaded the existence of trade secrets under this standard.

### a. ILKB has identified protectable business information used in interstate commerce.

ILKB has identified several categories of protectable business information contended to be trade secrets, including its "Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists." (*See* Compl. ¶ 89.) In *General Security*, this Court held that customer lists may qualify as trade secrets. *See Gen. Sec.*, 2018 U.S. Dist. LEXIS 105794, at *13-*15. The Court has also held that marketing strategies qualify as trade secrets. *See Oneida Grp.*, 2017 U.S. Dist. LEXIS 206717, at *17. What ILKB has pleaded is sufficient to "'generally identify the trade secrets at issue.'" *See Uni-Systems* 350 F. Supp. 3d at 171 (quoting *Sorias*, 124 F. Supp. 3d at 258). Moreover, the Complaint alleges interstate business dealings between entities in Delaware, Maryland, New York, and Texas. (*See* Compl. ¶¶ 1-6, 38-69.)

### b. ILKB pled that it takes reasonable protective measures.

"A plaintiff asserting a trade secrets claim must plead sufficient facts to give a defendant fair notice of the 'reasonable measures' the plaintiff took to keep the information secret." *Mason v. Amtrust Fin. Servs.*, No. 19cv8364 (DLC), 2020 U.S. Dist. LEXIS 50297, at *7 (S.D.N.Y. Mar. 23, 2020). Allegations that a plaintiff requires third parties to enter non-disclosure agreements before accessing trade-secret information suffice. *See Oneida Grp.*, 2017 U.S. Dist. LEXIS 206717, at *18. Here, ILKB pled that it has taken reasonable measures to secure these trade secrets, including restricting the use and disclosure of its trade secrets in its franchise agreements (Compl. ¶¶ 18-22) and requiring Defendants to enter a non-disclosure agreement before gaining access to ILKB's trade secrets during negotiations (*Id.* ¶¶ 24-37). ILKB has therefore adequately pled that it takes reasonable measures to protect its trade secrets.

### c. ILKB pled that its business information is valuable.

A complaint sufficiently alleges value by stating that the trade secret owner significantly invested in developing the secrets and explaining how competitors could gain an advantage by using those secrets. *See ExpertConnect, L.L.C. v. Fowler*, 2019 U.S. Dist. LEXIS 114931, at *12 (S.D.N.Y. July 10, 2019). ILKB has pleaded that it "has invested substantial time and money to maintain and improve its franchise system" (Compl. ¶ 16) and that these efforts have led it to "grow[] to be one of the largest kickboxing franchises in the United States . . ." (*id.* at ¶ 23). ILKB has also pleaded that "ILKB's trade secrets derives independent economic value from not being generally known to and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." (*Id.* ¶ 90.) This is sufficient to state a claim. *See Gen. Sec.*, 2018 U.S. Dist. LEXIS 105794, at *15.

### 2. *ILKB adequately pled misappropriation.*

Using trade secrets obtained under a non-disclosure agreement in violation of the

agreement is misappropriation. *See ExpertConnect*, 2019 U.S. Dist. LEXIS 114931, at *15. A plaintiff may also plead misappropriation by alleging that the defendant is apparently making use of the trade secrets. *See General Security*, 2018 U.S. Dist. LEXIS 105794, at *12.

Here, ILKB adequately alleges misappropriation. ILKB alleges that it entered a non-disclosure agreement with the Camac to facilitate negotiations for a purchase of ILKB's assets. (*Id.* at ¶ 24.) Camac agreed that it would not use ILKB's confidential information for any other purpose, and would not disclose or reproduce ILKB's confidential information. (*Id.* at ¶¶ 29-34; ECF No. 1-2.) Pursuant to that agreement, ILKB provided Camac with access to ILKB's trade secrets, including its "Operations Manual, training manuals, training programs, marketing strategies, marketing programs, and customer lists." (*See* Compl. at ¶¶ 26-28, 38, 41, 89.) Camac proceeded to violate the agreement by using ILKB's trade secrets to launch a competing kickboxing franchise system and to solicit ILKB's franchisees to defect. (*Id.* at ¶¶ 38-69.) That is misappropriation. *See Gen. Sec.*, 2018 U.S. Dist. LEXIS 105794, at *12. *See ExpertConnect*, 2019 U.S. Dist. LEXIS 114931, at *15. Likewise, as to Lanier, ILKB alleged that the franchise agreement required franchises to keep confidential information secret and to not use it for any purposed other than the operation of a franchised business. (Compl. at ¶¶ 17-22.)

As to the other Defendants, ILKB has alleged that they have received access to ILKB's trade secrets from Camac, under circumstances where they knew or had reason to know of Camac's obligations under the non-disclosure agreement. (Compl. at ¶¶ 46, 51, 59.) That is misappropriation. *See* 18 U.S.C. § 1839(5)(b)(ii)

ILKB has alleged a plausible DTSA claim against the Defendants. ILKB has pleaded that it has business information, that its business information has value because of its confidentiality, and that the Defendants misappropriated that information in violation of a non-disclosure agreements. The Court therefore has original jurisdiction over that claim.

### B. ILKB's state-law claims arise from the same case and controversy, and the Court therefore has pendant jurisdiction over those claims.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Claims are a part of the same case or controversy when they "stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).

Here, ILKB's claims satisfy this standard. Each state-law claim—breach of the non-disclosure agreement, tortious interference with ILKB's contracts with franchisees, and unjust enrichment—rests on the same events as the DTSA claim. Camac and Shahinian entered an NDA nondisclosure agreement with ILKB for the professed purpose of exploring an asset purchase, harvested ILKB's trade secrets, and then used those trade secrets to compete with

ILKB and solicit ILKB's franchisees in violation of the non-disclosure agreement. (Compl. at ¶¶ 24-69.) In other words, all of the state-law claims arise from the same "common nucleus of operative facts" as the DTSA claim and "form part of the same case or controversy." The Court therefore has supplemental subject matter jurisdiction over each state law claim.

### III.     **ILKB is likely to succeed on the merits of its DTSA claim.**

In addition to adequately pleading a DTSA claim, ILKB is likely to develop evidence to establish the elements of the claim. To succeed on a DTSA claim, a plaintiff must prove "'(1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret.'" *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 447 (S.D.N.Y. July 30, 2019) (citing *Medidata Sols., Inc., v. Veeva Sys. Inc.*, No. 17cv589, 2018 U.S. Dist. LEXIS 199763, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018)). ILKB will prove that has valuable trade secrets, and that the Defendants misappropriated those secrets.

#### A.     **ILKB can prove that it has trade secrets.**

A trade secret is defined as "all forms and types of… business… [or] technical… information, including… plans, compilations…, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized…" which the owner takes reasonable measures to keep secret and derives "independent economic value, actual or potential, from not being generally known to" others. 18 U.S.C. § 1839(3). Here, the evidence presented shows ILKB has trade secrets, which were misappropriated.

##### 1.     *ILKB's business is licensing business information to franchisees.*

ILKB is the franchisor of a kickboxing-focused health and fitness brand. (Decl. Castellini at ¶¶ 5-6.) In a franchised system, the franchisor sells to its franchisees, among other things, a proprietary business system, branding, and know-how. (*Id.* at ¶ 6.) ILKB's business model revolves around providing its painstakingly developed method of operating a kickboxing studio to its franchisees. (*Id.* at ¶¶ 12-18.) ILKB shares with its franchisees information regarding the operation of ILKB, including its manuals, training programs, marketing and branding plans, strategic planning, and other similar information. (*Id.* at ¶¶ 13-15.) The franchisees use this information to start and run their local business without the time and effort that would otherwise be required to develop the goodwill and knowhow ILKB provides. (*Id.* at ¶ 11.) ILKB's business is thus built on the business information—plans, methods, techniques, process, procedures and programs—it has developed for operating a kickboxing studio.

##### 2.     *ILKB's business information has value because it is not widely known.*

For ILKB, the confidential information is the most important part of its business—indeed, this information *is* the business. (*Id.* at ¶ 6.) The information on how to operate a kickboxing franchise is the most valuable portion of what ILKB sells to its customers. (*Id.* at ¶ 11.) A person with this information could easily adopt ILKB's methods and operate a competing business using ILKB's system. *Id.* In the franchise world, unfortunately, many franchisees "flip

their signs"—i.e. change the name of the business while continuing to operate the same business using the same systems. Franchisors, like ILKB, take great efforts, including litigation, to protect their trade secrets to prevent this outcome. (*Id.* at ¶¶ 17-18.)

### 3. *ILKB guards the secrecy of its business information to protect the value of its franchise system.*

Because these trade secrets are the core of ILKB's business model, ILKB carefully guards their secrecy. ILKB stores the vast majority of this information on electronic systems, which are password protected and monitored for potential intrusion. (*Id.* at ¶¶ 10, 13-15.) This information is only to be used in the operation of ILKB and in the operation of its franchisees. (*Id.* at ¶ 12; Ex. F at §§ 6.4, 8.) ILKB limits access to this information to employees and franchisees. (Decl. Castellini at ¶ 13.) ILKB requires both its employees and its franchisees to enter into agreements to protect this information from improper disclosure. (*Id.*; Ex. F at § 8.) As a result of these efforts, ILKB's trade secrets are not generally known to the public. (Decl. Castellini at ¶ 16.)

ILKB can demonstrate that it has trade secrets. Its business is licensing business information that enables franchisees to operate kickboxing studios. This information is valuable because it is confidential—if it were widely known, others could use the information to operate kickboxing studios without dealing with ILKB. To protect ILKB's business information, it takes reasonable measures to prevent unauthorized use or access of the information, including password protection and contractual restrictions. ILKB, therefore, is likely to successfully establish that it owns trade secrets.

### B. Defendants misappropriated ILKB's trade secrets.

Under the DTSA, misappropriation includes acquiring a trade secret by "improper means," which includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(5)(a), (6)(a). Misappropriation also includes disclosure of a trade secret that:

- was acquired through improper means without consent (18 U.S.C. § 1839(5)(b)(i)); and
- at the time of disclosure or use was acquired from or derived from a person who had a duty to protect the trade secret. (18 U.S.C. § 1839(5)(b)(ii)).

Here, ILKB can establish that the Defendants misappropriated ILKB's trade secrets.

ILKB shared trade secret with Defendants pursuant to an NDA and a franchise agreement. (ECF No. 1-2; Decl. Castellini at ¶¶ 13-17, 23.) The plain language of the agreement contemplates ILKB providing Defendants with "confidential information" relating to the operation of ILKB's business. (ECF No. 1-2.) Specifically, the non-disclosure agreement provides that "each party wishes to provide the other party with material non-public information relating to the Purpose which may include investment techniques, actual or anticipated strategies, future initiatives, data and methodology information (the 'Confidential Information')." (*Id.* at 2.)

Under the agreement, the use of the information was restricted to evaluating the deal and was not to be used for any other purpose. (*Id.*)

Pursuant to the NDA, ILKB provided Camac and its agents the confidential information, including but not limited to its operations manual, training materials, marketing and advertising plans, sales and business strategies, and details concerning its franchisees. (Decl. Castellini at ¶ 10.) Since ILKB provided that information to the Defendants, the Defendants have used it to contact ILKB's franchisees and induce them to switch to the Defendant's competing franchise system. (*Id.* at ¶¶ 21-23.)

Defendants invited more than 40 current ILKB franchisees to Zoom meetings pitching the competing franchise system. (*Id.* at ¶ 28.) During those meetings, the Defendants' presented a business model that incorporated much of what the Defendants learned from ILKB. Defendants' access to ILKB's confidential and proprietary information was apparent. (*Id.*) Defendants pitched a nearly identical business model to ILKB's. Defendants' personnel discussed pricing and promotional models, which were specifically developed for ILKB. (*Id.*) Notably, one of these presentations discussed three- and five-pack webtrials, which ILKB developed to help their customers attract business. As expressed in the transcript, these meetings discussed rebranding without actually changing the business system. (*Id.*)

In addition to apparently adopting ILKB's methods, Lanier and other former franchisees have attempted to access and use confidential and proprietary information from ILKB's websites. In particularly, just before breaking off from ILKB, Lanier's wife and another Kickhouse franchise Michelle Franco downloaded the CEO's 30 day plan. (*Id.* at ¶ 27; Decl. Doe at ¶¶ 6-7.) Even after being involved in litigation with ILKB, Kickhouse's agents have continued to attempt to misappropriate trade secrets. In recent days, at least two more Kickhouse franchisees, *using Kickhouse email addresses*, have tried to access the ILKB's databases. (*Id.* at ¶¶ 8-10.) All of these persons would be using this information in violation of their confidentiality and non-compete obligations contained in their franchise agreements. (*See* Ex. F.)

Kickhouse's business model appears to rely on using ILKB franchisees and their attendant knowledge, experience, and access to ILKB information to operate Kickhouse. Defendants should be enjoined because they should not be permitted to start a business by misappropriating another business's confidential and proprietary information to enrich themselves.

### IV.    Conclusion.

ILKB is likely to prove that the Defendants misappropriated ILKB's trade secrets. Camac entered a non-disclosure agreement with ILKB. Using this information acquired from ILKB with a duty to preserve secrecy, the Defendants worked in concert to form Kickhouse as a competing franchisor using ILKB's trade secrets. This establishes a violation of the DTSA, and entitles ILKB to equitable and monetary relief. Accordingly, ILKB respectfully requests that this Court finds that it has jurisdiction over this matter and enter a temporary restraining order against Defendants prohibiting them from using ILKB's confidential information.

Respectfully Yours,

GORDON & REES LLP

*[signature]*

PETER G. SIACHOS (PS-1107)